UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GARY GEORGE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-1884 |
| | § | |
| NABORS OFFSHORE CORPORATION and | § | |
| CHEVRON U.S.A., INC., | § | |
| | § | |
| *Defendants*. | § | |

## Memorandum and Order

Pending before the court is defendant Chevron U.S.A., Inc.'s motion for summary judgment (Dkt. 48), defendant Nabors Offshore Corporation's motion for summary judgment (Dkt. 53), and Chevron's and Nabors's motion to exclude plaintiff's expert Kenneth Kaigler (Dkt. 52). Having considered the motions for summary judgment, the response and reply relating to Nabors's motion, and applicable law, the court is of the opinion that both motions for summary judgment should be GRANTED and that the motion to exclude Kenneth Kaigler should be DENIED AS MOOT.

## I. Background

Plaintiff Gary George is a welder who, in January 2008, worked for Dynamic Industries, Inc. on an offshore production platform located off of the coast of Louisiana. Dkt. 60. The platform, SP 78-B, was owned by defendant Chevron U.S.A., Inc. Dkt. 53, Exh. A. Defendant Nabors Offshore Corporation is a drilling contractor who, in January 2008, had a contract to perform drilling work for Chevron. Dkt. 60. On January 29, 2008, Nabors was in the process of demobilizing a drilling rig that it owned from SP 78-B. George was "helping to clean up the remaining sections of Nabors' rig." Dkt. 60. George was trying to get from where he had eaten breakfast to his work area, but the

main pathway was blocked by a fuel tank supported by a crane, which Nabors's riggers were emptying into another fuel tank. Dkt. 61, Exh. 3. George decided to take an alternate route, but he had to cross a deck to get to the alternate route, and the deck was covered with about 200 hoses of various sizes. *Id.* These hoses were likely placed there so as to be offloaded onto a boat with a crane. Dkt. 53, Exhs. A, E. George observed that there were hoses all over the deck, but he decided to attempt to negotiate through the hoses to get to his work area. Dkt. 53, Exh. E. After he had proceeded part of the way across the deck, he realized that he would not be able to get through to his work area because there were approximately 200 tow tanks blocking the way. *Id.* So, he turned around to go back. *Id.* As he turned around, his foot got caught under a coiled hose, and he twisted and fractured his ankle. *Id.*

George brought this lawsuit against Chevron and Nabors, alleging that his injuries relating the incident on January 29, 2008, were caused by the negligence of Chevron and Nabors. Dkt. 29. George specifically alleges that Chevron and Nabors failed to provide a safe place to work, failed to provide adequate crew, failed to provide adequate training, left defective equipment on the platform, and failed to provide adequate safety measures that would have prevented the accident. *Id.* Nabors claims that it did not have a duty to warn George the about the hoses, which were an open and obvious condition about which George was aware. Dkt. 53. Chevron claims that it did not owe George a duty to warn about the hoses because Chevron is not responsible for providing George with a safe place to work or for warning George about an open and obvious condition, and Chevron is not responsible for the negligent acts of its independent contractors. Dkt. 48. Nabors and Chevron have therefore requested that the court grant summary judgment in their favor.

## II.  Legal Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 322.  If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required.  *Id* .  "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."  *Transamerica Ins. Co. v. Avenell* , 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a

genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Environmental Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III.  Nabors's Motion

All parties agree that SP 78-B is located off of the coast of Louisiana and that, under the Outer Continental Shelf Lands Act, Louisiana law applies as surrogate federal law. Under Louisiana law, an independent contractor owes a fellow independent contractor "at the very least . . . [a] duty to refrain from gross, willful or wanton negligence, and at most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition." *Lafont v. Chevron, U.S.A., Inc.*, 593 So.2d

416, 420 (La. App. 1991).  George contends that Nabors had a duty not to create a danger and to keep the premises in a reasonably safe condition and that Nabors breached that duty by blocking the regular route to George's work area and leaving the only potential alternative route strewn with "a virtual obstacle course of coiled hoses." Dkt. 60.  Nabors claims that it did not have a duty to warn George about the hoses on the platform because the presence of the hoses and the danger that they posed was an open and obvious condition.

Courts analogize the duty of a drilling contractor to the duty of an owner or occupier of land. *See, e.g.*, *Arabie v. Chevron U.S.A., Inc.*, 688 F. Supp. 1111, 1116 (W.D. La. 1988); *Joyner v. Ensco Offshore Co.*, No. Civ. A. 99-3754, 2001 WL 238182 at *2 (E.D. La. 2001); *Gibbons v. Noble Drilling Corp.*, No. Civ. A. 97-1132, 1998 WL 283299 (E.D. La. 1998).  "A landowner owes a plaintiff a duty to discover any unreasonably dangerous condition and to either correct the condition or warn of its existence." *Pitre v. Louisiana Tech Univ.*, 95-C-1466, 95-C-1487 (La. 6/28/1996); 673 So.2d 585, 590.  "Whether a condition is unreasonably dangerous requires consideration of: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature." *Hutchinson v. Knights of Columbus, Council No. 5747*, 2002-CA-1817 (La.App. 4 Cir. 10/10/03), 847 So.2d 665, 668 (citations omitted).  The "obviousness and apparentness of a potentially dangerous condition are relevant factors to be considered under the duty-risk analysis.  If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff." *Pitre*, 673 So.2d at 590.

Nabors provides a logical explanation regarding the utility of having the hoses on the deck. Nabors states that "the tight space and operational limitations present on a platform when the crane is in the last stages of being demobilized" make it almost impossible to keep the deck clear of obstructions.  Dkt. 62.  The deck was a "logical place"—according to *George*—to stage the tanks and hoses before moving them down with a crane onto the boat.[1]  Dkt. 53, Exh. E at 34-35.  George does not offer any evidence demonstrating a lack of utility in having the hoses and tanks on the deck during offloading.  In fact, while George asserts that prong (2) is only one of the factors to be considered in the unreasonably dangerous assessment, he does not offer any evidence relating to the other prongs.  Thus, he presents no issue of material fact with regard to prongs (1), (3), and (4).

The record contains significantly more information about whether the condition was obvious and apparent (prong (2)).  George testified that he "could see that there were hoses all over the deck" before he started to try to maneuver through them and that he "knew that [he] had to be careful where [he was] walking."  Dkt. 53, Exh. E at 39.  The area of the deck that George needed to cross to get to his work area was approximately 40' X 60', and it was "covered with hoses about six to eight inches deep where Nabors had piled all the hoses it had used on the job."  Dkt. 60.  "There were about 200 hundred [sic.] hoses of various sizes . . . rolled up and strewn everywhere across the deck."  Dkt. 60, Exh. 1 (George Aff.).  Any reasonable person who was contemplating walking through the area would realize that there was a danger of tripping.  It was an open and obvious condition and therefore was not unreasonably dangerous.

George attempts to overcome this fairly obvious conclusion by arguing that Nabors breached

---

[1] George did not provide any argument as to the utility of having the hoses on the deck in his briefing.  He did, however, address this topic briefly during his deposition.  George testified that usually the hoses are hanging on beams or racks. He then noted that "at the time they were separating all of their hoses, I guess, trying to figure out which hoses are what; and that's just where they were using it."  Dkt. 53, Exh. E at 35.  Later in the deposition, George conceded that "[t]hey were just getting everything on the top deck ready to put on the boat."  *Id*. at 36.

its duty "not to create a potential danger or to permit an unsafe condition to remain on premises" by blocking one route to George's work area and leaving hoses strewn all over the alternate route, which was a "fairly obvious hazard." *Id.* George contends that he "*had* to cross the hoses looking for an alternate route" because the normal route was blocked.[2] *Id.* (emphasis added). However, the availability or lack thereof of an alternate route does not impact the court's analysis as to whether the hoses presented an open and obvious danger. While the availability of an alternate route may have influenced George's weighing of whether he wanted to risk going over the hoses or not, it does not change the fact that the danger was "obvious to all." Because the danger was obvious to all, there was no duty.

Even if the danger of the hoses was not obvious to all, Nabors did not owe George a duty to warn about the hoses because it should have been obvious to George, given his knowledge and experience. An "owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm," but, "in considering a defendant's duty to a particular person, consideration should be given to the person's age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person." *Walker v. Union Oil Mill, Inc.*, 369 So.2d 1043, 1047 (La. 1979) (discussing an owner's duty under the Louisiana negligence statute). The duty is "lesser to a person with experience, knowledge and familiarity with the premises." *Id.* George had eighteen years of experience as an offshore welder,

---

[2]  There was no reason for George to believe that he had to cross over a dangerous area in order to get to his work area. According to Chevron's Drill Site Manager, Joseph Piechowicz, George had "stop work authority," which means that he had a "right and an obligation" if he saw or suspected "something might be wrong" to "stop a particular job or stop themselves or an operation and not suffer any kind of repercussions in doing so." Piechowicz testified that if George had asked for a "stop work" when he noticed the hoses were on the deck, Chevron would have "honored it," and that they "would have to work around it" and take their time "to do it in another more safe way." Dkt. 53, Exh. D. at 125-27.

and he had been through numerous training and safety meetings in which he had been warned how to recognize and avoid trip-and-fall hazards.[3]  Dkt. 53, Exh. E at 85-86.  Moreover, he admitted during his deposition that he knew the hoses posed a trip-and-fall hazard before he started to walk through them.  Dkt. 53, Exh. E. at 39:17-23.  Obviously, the hoses, which were clearly visible on the deck, did not pose an unreasonable risk of injury to George.

In sum, any reasonable person who came upon a deck with 200 hoses strewn everywhere would know that if he or she attempted to walk across the area, he or she might trip and fall.  And George, who had attended safety meetings in the offshore industry for eighteen years, certainly knew that it was a hazard and has even admitted that he knew it was a hazard.  Therefore, Nabors did not have a duty to warn George about the condition.  Nabors motion for summary judgment is GRANTED.

---

[3] George testified as follows:

> Q:  And you talk about safety things.  Surely over the 18 years that you have been in the offshore industry, you have been to a bunch of safety meetings.
> A:  Yes.
> Q:  And you have probably read a bunch of safety manuals.
> A:  Yeah.  Yes.
> . . .
> Q:  And one of the things that they tell you in every safety meeting is, you know, safety is everybody's responsibiltiy from the tool pusher all the way down – or the OIM all the way down to the laborer, right?
> A:  Yes.
> . . .
> Q:  And one of the things that they probably talk about, not every time but with some regularity, are trip-and-fall hazards.
> A:  Right.
> Q:  And not only do they talk about not creating trip-and-fall hazards but they also talk about watch where you step, be careful, stuff gets left on the deck and you need to watch where you are stepping, correct?
> A:  Yes.

Dkt. 53, Exh. E at 85:19 - 86:25.

### IV.  Chevron's Motion

Chevron filed its motion for summary judgment on July 21, 2010.  Dkt. 48.  In its motion, it argues that it did not owe George a duty because it is not responsible for the negligent acts of its independent contractors and because it did not have a duty to provide George with a safe place to work or to warn him about an open and obvious condition.  *Id.*  George's response to Chevron's motion was due on August 11, 2010.  The parties submitted a letter to the court on August 10, 2010 indicating that they had agreed to extend the response date to Chevron's motion until October 1, 2010.  Dkt. 49.  On September 28, 2010, the parties submitted another letter to the court, which indicated that they had agreed to extend the response deadline until October 11, 2010.  Dkt. 56. George did not file a response on or before October 11, 2010, and in fact has not responded to Chevron's motion at all.  George did mention Chevron's motion in its response to Nabors's motion, stating that Chevron had filed "a motion for summary judgment which Plaintiff was unable to effectively oppose, essentially because Chevron did not owe Plaintiff a duty to provide a safe workplace under Louisiana law, and Plaintiff could not show that any active negligence of Chevron caused the injury because the evidence pretty much all pointed to Nabors as the guilty party."  Dkt. 60.  Given this admission and the fact that under Southern District of Texas Local Rule 7.4 a motion to which a plaintiff fails to respond is treated as unopposed, the court GRANTS Chevron's motion for summary judgment.

9

## V. Conclusion

Chevron's motion for summary judgment (Dkt. 48) and Nabors's motion for summary judgment (Dkt. 53) are hereby GRANTED.  Chevron's and Nabors's motion to exclude the expert testimony of Kenneth Kaigler (Dkt. 52) is DENIED AS MOOT.

Signed at Houston, Texas on December 14, 2010.

_____
Gray H. Miller
United States District Judge